**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Sally Waller, Crystal Wilson, Rosie Stevenson, Patricia Cook, Judith Wendling, Winnie Van, Julia Biggs, Arthur Brobst, Shirley Dalley, Ruth Niehaus, Mary Travagline, Karen Brandon, Clara Gallman, Nancy Burbine, Beatrice Baur, Betty Davis, Lynn Cesar, Rose Martinez, Damasa Vazquez and Marie Graham, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.   09 C 3505 |
| | ) | |
| Phillips & Cohen Associates, Ltd., a New Jersey corporation, | ) ) | Judge Grady Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | <u>Jury Demanded</u> |

**SECOND AMENDED COMPLAINT**

Plaintiffs, Sally Waller, Crystal Wilson, Rosie Stevenson, Patricia Cook,

Judith Wendling, Winnie Van, Julia Biggs, Arthur Brobst, Shirley Dalley, Ruth

Niehaus, Mary Travagline, Karen Brandon, Clara Gallman, Nancy Burbine,

Beatrice Baur, Betty Davis, Lynn Cesar, Rose Martinez, Damasa Vazquez and

Marie Graham, bring this action under the Fair Debt Collection Practices Act, 15

U.S.C. § 1692, <u>et seq.</u> ("FDCPA"), for a finding that Defendant's debt collection

actions violated the FDCPA, and to recover damages for these violations of the

FDCPA, and allege:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28

U.S.C. § 1331.

2.      Venue is proper in this District because: a) part of the acts and transactions occurred here; b) Plaintiff Waller resides here; and, b) Defendant resides and transacts business here.

**PARTIES**

3.      Plaintiff, Sally Waller, is a citizen of the State of Illinois, residing in the Northern District of Illinois, from whom Defendant attempted to collect a delinquent consumer debt she owed for a Target credit card.  Defendant demanded payment of this debt, despite the fact that Ms. Waller was represented by the legal aid attorneys at the Chicago Legal Clinic's Legal Advocates for Seniors and People with Disabilities program ("LASPD"), located in Chicago, Illinois.

4.      The other Plaintiffs are all also clients of the attorneys at LASPD, from whom Defendant attempted to collect various delinquent consumer debts, despite the fact that they were represented by counsel.  Crystal Wilson is a citizen of the State of Pennsylvania; Rosie Stevenson is a citizen of the State of Mississippi; Patricia Cook is a citizen of the State of Michigan; Judith Wendling is a citizen of the State of Washington; Winnie Van is a citizen of the State of Arizona; Julia Biggs is a citizen of the State of North Carolina; Arthur Brobst is a citizen of the State of Pennsylvania; Shirley Dalley is a citizen of the State of New York; Ruth Niehaus is a citizen of the State of Florida; Mary Travagline is a citizen of the State of Maryland; Karen Brandon is a citizen of the State of Ohio; Clara Gallman is a citizen of the State of South Carolina; Nancy Burbine is a citizen of the State of Massachusetts; Beatrice Baur is citizen of the State of Michigan; Betty Davis is a citizen of the State of Michigan; Lynn Cesar is a citizen of the State of Arizona; Rose Martinez is a citizen of the State of New Jersey; Damasa Vasquez is a

citizen of the State of New York; and, Marie Graham is a citizen of the State of Colorado.

5.      Defendant, Phillips & Cohen Associates, Ltd. ("P&C"), is a New Jersey corporation, that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer debts.  In fact, Defendant P&C was acting as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debts it attempted to collect from Plaintiffs.

6.      From Defendant P&C's offices in Delaware, New Jersey, Nevada and Florida, it operates a nationwide debt collection business and attempts to collect delinquent debts from consumers in virtually every state, including consumers in the State of Illinois.

7.      Defendant P&C is licensed as a debt collection agency in the State of Illinois.  See, record from the Illinois Division of Professional Regulation, attached as Exhibit A.

8.      Moreover, Defendant P&C is licensed to do business in the State of Illinois, and maintains a registered agent within the State of Illinois.  See, record from the Illinois Secretary of State, attached as Exhibit B

**FACTUAL ALLEGATIONS**

**Ms. Sally Waller**

9.      Ms. Waller is a senior citizen who fell behind in paying her bills.  One such debt she was unable to pay was a debt she originally owed for a Target credit card. The Target account became delinquent, and eventually, Defendant P&C began

collection actions relative to that debt. Accordingly, Ms. Waller sought the assistance of legal aid attorneys at the Chicago Legal Clinic's Legal Advocates for Seniors and People with Disabilities program -- a nationwide program to protect seniors and disabled persons in financial difficulties, where those persons have virtually no assets and their limited income is protected from collections.

10.     On April 16, 2009, Ms. Waller's LASPD attorney wrote a letter to Defendant P&C, advising P&C that Ms. Waller was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Waller, and to cease all further collection activities because Ms. Waller was forced, by her financial circumstances, to refuse to pay her unsecured debts. Copies of this letter and the fax confirmation are attached as Exhibit C.

11.     Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Waller, demanding payment of the Target debt. A copy of this letter is attached as Exhibit D.

12.     Accordingly, on June 3, 2009, Ms. Waller's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Waller. Copies of this letter and the fax confirmation are attached as Exhibit E.

**Ms. Crystal Wilson**

13.     Ms. Wilson is a senior citizen who could no longer pay her credit card debts, including one for Lowe's. After it became delinquent and was turned over to collections, Ms. Wilson turned the matter over to her attorneys at LASPD.

14.     On January 2, 2009, Ms. Wilson's LASPD attorney wrote to Defendant P&C, informing it that Ms. Wilson was represented by counsel, and directing P&C to

4

cease contacting Ms. Wilson, and to cease all further collection activities, because Ms. Wilson was forced, by her financial circumstances, to refuse to pay her unsecured creditors.  Copies of this letter and the fax confirmation are attached as Exhibit F.

15.    Nonetheless, on March 12, 2009, Defendant P&C sent a collection letter directly to Ms. Wilson, demanding payment of the Lowe's debt.  A copy of this letter is attached as Exhibit G.

16.    Accordingly, on May 5, 2009, Ms. Wilson's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Wilson.  Copies of this letter and the fax confirmation are attached as Exhibit H.

**Ms. Rosie Stevenson**

17.    Ms. Stevenson is a senior citizen who fell behind on paying her bills, including a Lowe's credit card.  Ms. Stevenson turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

18.    On April 10, 2009, Ms. Stevenson's LASPD attorney wrote to Defendant P&C, informing it that Ms. Stevenson was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Stevenson, and to cease all further collection activities because Ms. Stevenson was forced to refuse to pay her unsecured debts, due to her financial problems.  Copies of this letter and the fax confirmation are attached as Exhibit I.

19.    Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Stevenson, demanding payment of the Lowe's credit card debt.  A copy of this letter is attached as Exhibit J.

5

20.    Accordingly, on May 26, 2009, Ms. Stevenson's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Stevenson.  Copies of this letter and the fax confirmation are attached as Exhibit <u>K</u>.

**Ms. Patricia Cook**

21.    Ms. Cook is a senior citizen who could no longer pay her unsecured bills, including a Target credit card.  Accordingly, when Defendant P&C began demanding payment of this delinquent debt, she turned the matter over to her legal aid attorneys at LASPD.

22.    On April 16, 2009, Ms. Cook's LASPD attorney wrote to Defendant P&C, informing it that Ms. Cook was represented by counsel as to this debt, and directing P&C to cease contacting her, and to cease all further collection activities because she was forced, due to her financial circumstances, to refuse to pay the debt.  Copies of this letter and the fax confirmation are attached as Exhibit <u>L</u>.

23.    Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Cook, demanding payment of the Target debt. A copy of this letter is attached as Exhibit <u>M</u>.

24.    Accordingly, on June 1, 2009, Ms. Cook's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Cook.  Copies of this letter and the fax confirmation are attached as Exhibit <u>N</u>.

**Ms. Judith Wendling**

25.    Ms. Wendling is a disabled woman who had to stop paying her credit card debts, including a Target credit card.  Accordingly, Ms. Wendling turned Defendant P&C's collection actions regarding that delinquent debt over to her attorneys at LASPD.

6

26.     On April 26, 2009, Ms. Wendling's LASPD attorney wrote to Defendant P&C, informing it that Ms. Wendling was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Wendling, and to cease all further collection activities because she was forced, due to her financial circumstances, to refuse to pay the debt.  Copies of this letter and the fax confirmation are attached as Exhibit O.

27.     Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Wendling, demanding payment of the Target debt.  A copy of this letter is attached as Exhibit P.

28.     Accordingly, on June 3, 2009, Ms. Wendling's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Wendling.  Copies of this letter and the fax confirmation are attached as Exhibit Q.

**Ms. Winnie Van**

29.     Ms. Van is a senior citizen who could no longer pay her credit card debts, including her Target credit card.  Accordingly, Ms. Van turned Defendant P&C's collection actions regarding that delinquent debt over to her attorneys at LASPD.

30.     On April 21, 2009, Ms. Van's LASPD attorney wrote to Defendant P&C, advising it Ms. Van was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Van, and to cease all further collection activities because Ms. Van was forced, by her financial circumstances, to refuse to pay this debt.  Copies of this letter and the fax confirmation are attached as Exhibit R.

31.     Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Van, demanding payment of the Target debt.  A copy of this letter is attached as Exhibit S.

32.    Accordingly, on June 1, 2009, Ms. Van's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Van.  Copies of this letter and the fax confirmation are attached as Exhibit <u>T</u>.

**Ms. Julia Biggs**

33.    Ms. Biggs is a senior citizen who could no longer pay her credit card debts, including a Lowe's credit card.  Accordingly, Ms. Biggs turned Defendant P&C's collection actions regarding that delinquent debt over to her legal aid attorneys at LASPD.

34.    On January 16, 2009, Ms. Biggs' LASPD attorney wrote to Defendant P&C, advising it that Ms. Biggs was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Biggs, and to cease all further collection activities.  Copies of this letter and the fax confirmation are attached as Exhibit <u>U</u>.

35.    Nonetheless, Defendant P&C sent collection letters, dated January 30, 2009 and March 12, 2009, directly to Ms. Biggs, demanding payment of the Lowe's debt.  Copies of these letters are attached as Exhibits <u>V</u> and <u>W</u>, respectively.

36.    Accordingly, on March 31, 2009, Ms. Biggs' LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Biggs.  Copies of this letter and the fax confirmation are attached as Exhibit <u>X</u>.

**Mr. Arthur Brobst**

37.    Mr. Brobst is a senior citizen who could no longer pay his credit card debts, including his Wal-Mart credit card.  After it became delinquent and was turned over to collections, Mr. Brobst turned the matter over to his attorneys at LASPD.

38.    On April 9, 2009, Mr. Brobst's LASPD attorney wrote to Defendant P&C, advising it that Mr. Brobst was represented by counsel, and directing P&C to cease contacting Mr. Brobst, and to cease all further collection activities, because Mr. Brobst was forced, by his financial circumstances, to refuse to pay his unsecured creditors. Copies of this letter and the fax confirmation are attached as Exhibit Y.

39.    Nonetheless, on May 2, 2009, Defendant P&C sent a collection letter directly to Mr. Brobst, demanding payment of the Wal-Mart debt.  A copy of this letter is attached as Exhibit Z.

40.    Accordingly, on June 8, 2009, Mr. Brobst's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Mr. Brobst.  Copies of this letter and the fax confirmation are attached as Exhibit AA.

**Ms. Shirley Dalley**

41.    Ms. Dalley is a senior citizen who fell behind on paying her bills, including a Wal-Mart credit card.  Ms. Dalley turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

42.    On March 18, 2009, Ms. Dalley's LASPD attorney wrote to Defendant P&C, advising it that Ms. Dalley was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Dalley, and to cease all further collection activities because Ms. Dalley was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of this letter and the fax confirmation are attached as Exhibit BB.

43.     Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Dalley, demanding payment of the Wal-Mart debt.  A copy of this letter is attached as Exhibit <u>CC</u>.

44.     Accordingly, on June 8, 2009, Ms. Dalley's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Dalley.  Copies of this letter and the fax confirmation are attached as Exhibit <u>DD</u>.

**<u>Ms. Ruth Niehaus</u>**

45.     Ms. Niehaus is a senior citizen who fell behind on paying her bills, including Wal-Mart and Chevron/Texaco credit cards.  Ms. Niehaus turned these delinquent debts over to her attorneys at LASPD to respond to Defendant P&C.

46.     On March 31, 2009, Ms. Niehaus' LASPD attorney wrote letters to Defendant P&C, advising it that Ms. Niehaus was represented by counsel as to these debts, and directing P&C to cease contacting Ms. Niehaus, and to cease all further collection activities because Ms. Niehaus was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of these letters and the fax confirmations are attached as Group Exhibit <u>EE</u>.

47.     Nonetheless, Defendant P&C sent collection letters, dated May 2, 2009, directly to Ms. Niehaus, demanding payment of the Wal-Mart and Chevron/Texaco debts.  Copies of these letters are attached as Group Exhibit <u>FF</u>.

48.     Accordingly, on June 15, 2009, Ms. Niehaus' LASPD attorney had to send Defendant P&C additional letters, directing it to cease communicating directly with Ms. Niehaus.  Copies of these letters and the fax confirmations are attached as Exhibit <u>GG</u>.

**Ms. Mary Travagline**

49.    Ms. Travagline is a disabled woman who fell behind on paying her bills, including a QVC credit card.  Ms. Travagline turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

50.    On March 10, 2009, Ms. Travagline's LASPD attorney wrote to Defendant P&C, advising it that Ms. Travagline was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Travagline, and to cease all further collection activities because Ms. Travagline was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of this letter and the fax confirmation are attached as Exhibit HH.

51.    Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Travagline, demanding payment of the QVC debt.  A copy of this letter is attached as Exhibit II.

52.    Accordingly, on June 15, 2009, Ms. Travagline's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Travagline.  Copies of this letter and the fax confirmation are attached as Exhibit JJ.

53.    In utter disregard of the repeated notice that Ms. Travagline was represented by counsel, Defendant P&C's debt collectors have repeatedly called Ms. Travagline's home to demand that she pay the QVC debt, including a telephone call on June 24, 2009, during which its debt collector, "Jackie", repeatedly told Mr. Travagline's husband, Joseph, that they had to pay the QVC debt.  Mr. Travagline repeatedly told the debt collector that the couple was represented by attorneys and that the collection calls had to stop.

**Ms. Karen Brandon**

54.    Ms. Brandon is a senior citizen who fell behind on paying her bills, including a Target credit card.  Ms. Brandon turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

55.    On April 24, 2009, Ms. Brandon's attorney at LASPD wrote to Defendant P&C, advising it that Ms. Brandon was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Brandon, and to cease all further collection activities because Ms. Brandon was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of this letter and the fax confirmation are attached as Exhibit KK.

56.    Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Brandon, demanding payment of the Target debt.  A copy of this letter is attached as Exhibit LL.

57.    Accordingly, on June 15, 2009, Ms. Brandon's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Brandon.  Copies of this letter and the fax confirmation are attached as Exhibit MM.

**Ms. Clara Gallman**

58.    Ms. Gallman is a senior citizen who fell behind on paying her bills, including a JC Penney credit card.  Ms. Gallman turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

59.    On October 14, 2008, Ms. Gallman's attorney at LASPD wrote to Defendant P&C, advising it that Ms. Gallman was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Gallman, and to cease all further

collection activities because Ms. Gallman was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of this letter and the fax confirmation are attached as Exhibit <u>NN</u>.

60.     Nonetheless, Defendant P&C sent a collection letter, dated November 21, 2008, directly to Ms. Gallman, demanding payment of the JC Penney debt.  A copy of this letter is attached as Exhibit <u>OO</u>.

61.     Accordingly, on January 6, 2009, Ms. Gallman's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Gallman.  Copies of this letter and the fax confirmation are attached as Exhibit <u>PP</u>.

62.     In utter disregard of the notices of representation that it had received, Defendant P&C sent yet another collection letter, dated January 30, 2009, directly to Ms. Gallman, demanding payment of the JC Penney debt.  A copy of this letter is attached as Exhibit <u>QQ</u>.

**<u>Ms. Nancy Burbine, Ms. Beatrice Baur and Ms. Betty Davis</u>**

63.     Ms. Burbine, Ms. Baur and Ms. Davis are all senior citizens who fell behind on paying their bills, including their Target credit cards.  These ladies turned these delinquent debts over to their attorneys at LASPD when Defendant P&C began its collection actions.

64.     Ms. Burbine's, Ms. Baur's and Ms. Davis' attorney at LASPD wrote letters to Defendant P&C, dated October 6, 20, and 27, 2008, respectively, advising P&C that these ladies were represented by counsel as to these Target debts, and directing P&C to cease contacting these ladies, and to cease all further collection activities because Ms. Burbine, Ms. Baur and Ms. Davis were forced, by their financial circumstances, to

refuse to pay their unsecured debts.  Copies of these letters and the fax confirmations are attached as Group Exhibit <u>RR</u>.

65.    Nonetheless, Defendant P&C sent collection letters, dated November 21, 2008, directly to Ms. Burbine, Ms. Baur and Ms. Davis, demanding payment of the Target debts that, disturbingly, were addressed to the "To The Estate Of" each of these ladies.  Copies of these letters are attached as Group Exhibit <u>SS</u>.

66.    Accordingly, Ms. Burbine's, Ms. Baur's and Ms. Davis' LASPD attorney had to send Defendant P&C additional letters, dated December 24 and 30 2008, and January 12, 2009, respectively, directing it to cease communicating directly with these ladies.  Copies of these letters and fax confirmations are attached as Group Exhibit <u>TT</u>.

**<u>Ms. Lynn Cesar</u>**

67.    Ms. Cesar is a senior citizen who fell behind on paying her bills, including Washington Mutual and TSYS credit cards.  Ms. Cesar turned these delinquent debts over to her attorneys at LASPD when Defendant P&C began its collection actions.

68.    As to the Washington Mutual debt, on March 21, 2008, and June 23, 2008, Ms. Cesar's attorney at LASPD wrote letters to Defendant P&C, advising P&C that Ms. Cesar was represented by counsel as to her debts, and directing P&C to cease contacting Ms. Cesar, and to cease all further collection activities because Ms. Cesar was forced, by her financial circumstances, to refuse to pay her unsecured debts. Copies of these letters are attached as Group Exhibit <u>UU</u>.

69.    Nonetheless, Defendant P&C repeatedly called Ms. Cesar during August and September, 2008, and left recorded message demanding that she call P&C to arrange payment of her Washington Mutual debt.

70.     As to the TSYS debt, on September 29, 2008, and October 3, 2008, Ms. Cesar's attorney at LASPD wrote letters to Defendant P&C, advising P&C that Ms. Cesar was represented by counsel as to her debts, and directing P&C to cease contacting Ms. Cesar, and to cease all further collection activities because Ms. Cesar was forced, by her financial circumstances, to refuse to pay her unsecured debts. Copies of these letters are attached as Group Exhibit VV.

71.     Nonetheless, Defendant P&C sent a collection letter, dated November 21, 2008, directly to Ms. Cesar demanding payment of the TSYS debt that, disturbingly, was addressed to the "To The Estate Of" Ms. Cesar.  A copy of this letter is attached as Group Exhibit WW.

**Ms. Rose Martinez**

72.     Ms. Martinez is a senior citizen who fell behind on paying her bills, including a Target credit card.  Ms. Martinez turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

73.     On April 26, 2009, Ms. Martinez's LASPD attorney wrote to Defendant P&C, informing it that Ms. Martinez was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Martinez, and to cease all further collection activities because Ms. Martinez was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of this letter and the fax confirmation are attached as Exhibit XX.

74.     Nonetheless, Defendant P&C sent a collection letter, dated May 2, 2009, directly to Ms. Martinez, demanding payment of the Target debt.  A copy of this letter is attached as Exhibit YY.

75.     Accordingly, on June 27, 2009, Ms. Martinez's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Martinez.  Copies of this letter and the fax confirmation are attached as Exhibit <u>ZZ</u>.

**Ms. Damasa Vasquez**

76.     Ms. Vasquez is a senior citizen who could no longer pay her credit card debts, including her Target credit card.  Accordingly, Ms. Vasquez turned Defendant P&C's collection actions regarding that delinquent debt over to her attorneys at LASPD.

77.     On September 25, 2009, Ms. Vasquez's LASPD attorney wrote to Defendant P&C, advising it that Ms. Vasquez was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Vasquez, and to cease all further collection activities because she was forced, by her financial circumstances, to refuse to pay this debt.  Copies of this letter and the fax confirmation are attached as Exhibit <u>AAA</u>.

78.     Nonetheless, Defendant P&C then called LASPD on September 29, 2008 and when LASPD called P&C back that day its debt collector, "Gina", and then her supervisor, repeatedly demand that LASPD's client, Ms. Vasquez pay the Target debt – even though the paralegal at LASPD repeatedly informed P&C to cease collections and that Ms. Vasquez refused to pay the debt.

**Ms. Marie Graham**

79.     Ms. Graham is a senior citizen who fell behind on paying her bills, including a Target credit card.  Ms. Graham turned that delinquent debt over to her attorneys at LASPD when Defendant P&C began its collection actions.

80.     On April 23, 2009, Ms. Graham's attorney at LASPD wrote a letter to Defendant P&C, advising it that Ms. Martinez was represented by counsel as to this debt, and directing P&C to cease contacting Ms. Graham, and to cease all further collection activities because she was forced, by her financial circumstances, to refuse to pay her unsecured debts.  Copies of this letter and the fax confirmation are attached as Exhibit <u>BBB</u>.

81.     Nonetheless, Defendant P&C called Ms. Graham, on or about June 30, 2009, and left a message demanding that she call P&C back.  Accordingly, on July 1, 2009, Ms. Graham's LASPD attorney had to send Defendant P&C yet another letter, directing it to cease communicating directly with Ms. Graham.  Copies of this letter and the fax confirmation are attached as Exhibit <u>CCC</u>.

82.     Defendant P&C then called LASPD on or about July 2, 2009, and when LASPD called it back that day its debt collector, "Bittney Hutto", demanded that LASPD's client, Ms. Graham pay the Target debt – even though the paralegal at LASPD informed P&C to cease collections and that Ms. Graham refused to pay the debt.

83.     All of the collection actions complained of in this matter occurred within one year of the date of this Complaint.

84.     Defendant P&C's collection communications are to be interpreted under the "unsophisticated consumer" standard.  <u>See</u>, <u>Gammon v. GC Services, Ltd. Partnership</u>, 27 F.3d 1254, 1257 (7th Cir. 1994).

**COUNT I**
**Violation Of § 1692c(a)(2) Of The FDCPA --**
**Communicating With A Consumer Represented By Counsel**

85.    Plaintiffs adopt and reallege ¶¶ 1-84.  This Count I is brought on behalf all of the Plaintiffs, except Ms. Vasquez.

86.    Section 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address.  See, 15 U.S.C. § 1692c(a)(2).

87.    Defendant knew that Plaintiffs were represented by counsel in connection with these debts because their attorneys had informed Defendant, in writing, that Plaintiffs were represented by counsel, and had directed Defendant to cease directly communicating with Plaintiffs.  By directly contacting Plaintiffs, via letters and/or telephone calls, despite being advised that each of the Plaintiffs were represented by counsel, Defendant P&C violated § 1692c(a)(2) of the FDCPA.

88.    Defendant P&C's violations of § 1692c(a)(2) of the FDCPA render it liable for damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C.  § 1692k.

**COUNT II**
**Violation Of § 1692c(c) Of The FDCPA --**
**Failure To Cease Collections**

89.    Plaintiffs adopt and reallege ¶¶ 1-84.

90.    Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay.  See, 15 U.S.C. § 1692c(c).

91.     Here, Plaintiffs' LASPD attorneys told Defendant P&C to cease communications, and that, because each of the Plaintiffs could no longer afford to pay these debts, they were forced to refuse to pay same.  By continuing to communicate regarding these debts and demanding payment, Defendant P&C violated § 1692c(c) of the FDCPA.

92.     Defendant P&C's violations of § 1692c(c) of the FDCPA render it liable for damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C. § 1692k.

**COUNT III**
**Violation Of § 1692e Of The FDCPA --**
**False Statements**

93.     Plaintiffs adopt and reallege ¶¶ 1-84.  Count III is brought on behalf of Plaintiffs, Nancy Burbine, Beatrice Baur, Betty Davis and Lynn Cesar.

94.     Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of a debt.  Defendant violated § 1692e of the FDCPA by making false statements about these Plaintiffs, including, but not limited to that they were deceased by addressing the letters to the "To The Estate Of", when, in fact, each of these Plaintiffs were and are alive.

95.     Defendant's violation of § 1692g(a)(1) of the FDCPA renders it liable for damages, costs and reasonable attorneys' fees.  See, 15 U.S.C. § 1692k.

**COUNT IV**
**Violation Of § 1692d(2) Of The FDCPA -**
**Harassing And Abusive Telephone Calls**

96.     Plaintiffs adopt and reallege ¶¶ 1-84.  Count IV is brought on behalf of Plaintiffs, Nancy Burbine, Beatrice Baur, Betty Davis and Lynn Cesar.

97.    Section 1692d of the FDCPA prohibits a debt collector from engaging in any conduct, the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, including "the use of  …  language, the natural consequence of which is to abuse the hearer . . . ", <u>see</u> 15 U.S.C. § 1692d(2).

98.    Defendant engaged in conduct, the natural consequences of which was harassing, oppressive and abusive, in violation of § 1692d(2) of the FDCPA, by addressing the letters it sent them to "To The Estate Of" when, in fact, each of these Plaintiffs were and are alive.  It is indeed highly harassing and abusive to tell senior citizens they are deceased.

99.    Defendant's violation of § 1692d(2) of the FDCPA renders it liable for damages, costs, and reasonable attorneys' fees.  <u>See</u>, 15 U.S.C.  § 1692k.

## PRAYER FOR RELIEF

Plaintiffs, Sally Waller, Crystal Wilson, Rosie Stevenson, Patricia Cook, Judith Wendling, Winnie Van, Julia Biggs, Arthur Brobst, Shirley Dalley, Ruth Niehaus, Mary Travagline, Karen Brandon, Clara Gallman, Nancy Burbine, Beatrice Baur, Betty Davis, Lynn Cesar, Rose Martinez, Damasa Vasquez and Marie Graham, pray that this Court:

1.    Find that Defendant P&C's debt collection actions violated the FDCPA;

2.    Enter judgment in favor of Plaintiffs, and against Defendant P&C, for damages, costs, and reasonable attorneys' fees, as provided for by § 1692k(a) of the FDCPA; and,

3.    Grant such further relief as deemed just.

## JURY DEMAND

Plaintiffs demand trial by jury.

Sally Waller, Crystal Wilson, Rosie Stevenson, Patricia Cook, Judith Wendling, Winnie Van, Julia Biggs, Arthur Brobst, Shirley Dalley, Ruth Niehaus, Mary Travagline, Karen Brandon, Clara Gallman, Nancy Burbine, Beatrice Baur, Betty Davis, Lynn Cesar, Rose Martinez, Damasa Vasquez and Marie Graham,

By: /s/ David J. Philipps
One of Plaintiffs' Attorneys

Dated:  July 15, 2009

David J. Philipps      (Ill. Bar No. 06196285)
Mary E. Philipps      (Ill. Bar No. 06197113)
Philipps & Philipps, Ltd.
9760 S. Roberts Road, Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2009, a copy of the foregoing **SECOND AMENDED COMPLAINT** was electronically filed with the District Court.  Notice of this filing will be sent to the following parties, via U.S. Mail, first class, postage pre-paid, before 5:00 p.m. on July 15, 2009.

Peter A. Velde
Kightlinger & Gray, LLP
151 N. Delaware Street
Suite 600
Indianapolis, Indiana 46204

Robert Obringer
Phillips & Cohen Associates, Ltd.
695 Rancocas Road
Westhampton, New Jersey 08060


/s/ David J. Philipps

David J. Philipps      (Ill. Bar No. 06196285)
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
DavePhilipps@aol.com